## In re FT. WASHINGTON RIDGE ROAD.

(Supreme Court, Appellate Division, First Department. August 4, 1897.)

1. MUNICIPAL CORPORATIONS—LOCATION OF STREETS—MAPS.

Laws 1892, c. 114, required the making of a map of Ft. Washington Ridge Road largely in accord with a previous map of said road, which it designated as bearing a certain date, and as having been filed on a certain day. *Held* immaterial that it erroneously described the map as having been made by the commissioners of Central Park, whose successors had made it.

2. SAME—LINES OF ROAD.

Said chapter required the new map to show as nearly as possible the location, courses, and boundaries of the road as originally laid out, or intended to be laid out, as well as the lines of the road as relocated under said act. *Held* that, where the lines on the map of the road as originally laid out corresponded almost precisely with the lines on the map of the road as laid out under said chapter, it was no objection to the new map that it showed no difference between such lines.

3. SAME—ALTERATION OF MAP.

Alterations of a map of a proposed road, consisting of the insertion of sheets purporting to contain corrections of clerical errors therein, did not affect its validity, where they were neither authorized by the commissioners who made the map, nor certified to by them.

Appeal from special term, New York county.

Application of the mayor, etc., for the appointment of commissioners of appraisal in respect of the Ft. Washington Ridge Road. Catherine F. Ryer and other property owners appeal from an order confirming the report of the commissioners of appraisal as to the assessment for regulating and grading.    Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, and PARKER, JJ.

George S. Coleman, for appellants.

T. C. O'Sullivan, for respondent mayor, etc.

James A. Deering, for respondents New York Institution for the Deaf and Dumb and other owners.

RUMSEY, J.    A statute passed in 1865 made provision for the laying out and improvement of certain portions of the city of New York.    Pursuant to that statute, there was laid out in the upper part of the island, commencing at the junction of 159th street and 11th avenue, a road known as the "Ft. Washington Ridge Road," which extended northerly by various courses and distances, until it ran into the Kingsbridge Road, at a point somewhat above 198th street.    The map of this road as it was proposed to be constructed was certified and dated the 18th day of February, 1873, and was filed in the office of the register on the 7th day of April of that same year.    Proceedings were taken for the condemnation of land, and for the estimate and appraisal of damages and benefits; and on the 26th of April, 1876, the damage and benefit maps were filed. After that had been done, the work of opening and grading was begun.    Up to that time it appears that although the road had been laid out upon paper, and the courses and distances had been stated upon the map, it had not actually been located upon the ground, which, it seems, was not thoroughly done until shortly before the

work of opening and grading had been begun. While the original map of the location of the road filed in 1873 had purported to give courses and distances, and the width of the road between the lines, and its general direction, it appears that, through some defect or incorrectness in the map, it was not practicable to lay out accurately upon the ground the road as it was designated upon the map. Whatever may have been the reason, it appears that, after the road had been partly completed, it was ascertained that the road as built did not agree either in courses or in location with the road as originally projected, and as drawn upon the maps, and serious doubts arose whether it was proper to continue the construction of the road until the work which had been done before that time had been legalized by the legislature, so that lawful assessments could be made for the expense of the work. For the purpose of settling all doubts upon the question of the legality of the construction of the road, the legislature, on the 9th of March, 1892, passed chapter 114 of the Laws of 1892, which is the act under which the proceeding now before the court is taken. That act provided "for settling and establishing permanently the location and boundaries of the avenue known as the 'Ft. Washington Ridge Road,' in the city of New York, and in relation to the improvement thereof." It provided in the first place for the appointment of three commissioners, who should at once adjust, determine, and establish the lines of the road, so that it should accord and agree as nearly as possible with the road as laid out or intended to be laid out by the map of February 18, 1873; but power was given to the commissioners to alter and change the lines and grade of the road in order to avoid any substantial change in the lines and grade as laid out. The commissioners were required to make two maps showing the width, course, direction, curves, and grades of the road as they should establish it, which maps were also required to show the location, as nearly as possible, of the road as laid out or originally intended to be laid out. It was then established substantially that the maps so filed should be final and conclusive in respect to the road as established by them, and the lines established upon the maps should be the permanent boundaries of the road, and all parts of the road before that time laid out, and all lands which were not included within the lines as established by the commissioners should cease to be public streets or roads of the city; and it was further provided that all lands included within the lines as laid out by the commissioners, which had not already been taken, should, upon compliance with certain other provisions, become public lands, and a portion of said road. For the purpose of appraising the cost of said road and the damages to be paid to lot owners whose lands should be taken, three commissioners of appraisal were appointed, whose duty it was, not only to fix the amount which had theretofore been paid for the laying out of the road, and the amount which was necessary to complete it, and assess that sum upon the adjacent lands, but also to appraise the value of the property which should be taken under the new location, and the value of the property which, having been taken under the old location, had ceased to

belong to the city. These appraisers, having been appointed, met and assessed the amount to be paid for the completion of the road; and from the order confirming their report fixing that amount, and assessing it upon the adjacent owners, this appeal is taken. A very large majority of the lot owners were satisfied with the report of the commissioners of appraisal, and the appellants here represent only a small minority in number and amount of those assessed. Upon the hearing of the motion to confirm the report, as well as upon the hearing before the commissioners, the appellants here presented various objections, many of which seem to have been abandoned upon this appeal, and will not be considered, only those being examined which are presented in the brief of counsel.

The first point made by the appellants is that the map filed by the mayor's commissioners in an attempt to comply with the provisions of chapter 114 of the Laws of 1892 does not conform with the requirements of that act. The first item of alleged nonconformance appears to be based upon the claim that the statute requires an impossibility, for the reason that it requires the commissioners to construct their map as nearly as possible in accord and agreement with the lines, courses, boundaries, curves, and direction of the road as laid out or intended to be laid out by the commissioners of Central Park; and the counsel say that as the commissioners of Central Park went out of existence long before 1873, and the map dated 18th of February, 1873, had been laid out by the commissioners of the department of public parks, the mayor's commissioners appointed under the act of 1892 could not make a map to accord and agree with the map laid out by the commissioners of Central Park. It is hardly necessary to take time seriously to examine this contention. The map which was to be considered by the commissioners appointed under the law of 1892 was clearly designated in that statute as the map dated 18th of February, 1873, and filed on the 7th of April, 1873; and whether that map was made by the commissioners of Central Park, or their successors, the commissioners of the department of public parks, is a matter of no sort of importance. It is sufficient if the map was so clearly designated that it could be easily ascertained.

It is also complained that the map made under the provisions of the law of 1892 does not comply with the statute, because the statute required that the commissioners, in making the map, should, in addition to putting upon it the lines of the road as located by them, also show as nearly as possible the location, course, and boundaries of the road as originally laid out, or intended to be laid out, and also the appraisals of land whose titles had been acquired by the city, and that it does not show the location, courses, and boundaries of the road as originally laid out. This objection is quite as frivolous as the other. It appears from the testimony that the lines upon the map of the road as originally laid out correspond almost precisely with the lines upon the map of the road as laid out by the mayor's commissioners under the law of 1892. The discrepancy between the road as built and the road as laid out by the mayor's commissioners arose, not because the lines were incorrect, but

because the figures showing the radii of the curves and the length of the curves and tangents were so incorrectly put upon the map that in the absence of monuments, which had not been placed upon the ground, it was impossible to locate correctly the lines of the original map, and therefore, although the map may have been made correctly, errors occurred in the effort to lay out upon the ground the road in accordance with the original map. The only change in the road which was made to appear by the new map was one which was particularly located and designated. In other respects it was made to appear that the lines of the two maps corresponded, and for that reason it was impracticable to show any difference between those lines. It is to be remembered that the trouble arose, not because the map, regarded as a picture of the road as it was intended to be, was incorrect, but because the road, as laid out, in an effort to locate the lines upon the ground, did not correspond with the lines as they were put upon the map; and the discrepancy which exists is not between the lines of the two maps, but between the map lines and the actual lines as they are upon the ground. Mr. Haskins, who made the map, states that his map does show the location, course, and boundaries of the road as originally intended to be laid out, and that the reason that there is no difference between those locations and the locations as made by the mayor's commissioners is that the same lines were adopted as the correct lines of the road.

The third objection is that the map had been altered since it was filed. The alleged alteration consisted in inserting in the map, after its filing, two sheets purporting to contain corrections of clerical errors. These were inserted without any authority of the commissioners, and were not certified by them, and therefore, if they contain any changes of the map as originally certified, they cannot be regarded as a part of the map, and are not important.

It is contended by the appellants that this map is erroneous, for the reason that it indicates that parcels of property outside the road were acquired by the city in the proceeding for opening, which was confirmed in 1876, and that appraisals of property within the limits of the road were not acquired in that proceeding. This contention is based upon the idea that the location of the road as shown upon the two maps is precisely the same, and that the road as laid out upon the ground and partly completed complies exactly with the road as located upon the map. It appears fully by the papers that this is not the case, but that, as has already been said, the road was not laid out upon the ground as it was intended to be located, and that, because of the failure to lay it out properly, many parcels of land which were intended to be taken, and which would have been taken had the road been laid out as it should have been, were not within the boundaries of the road as it was opened, and that many parcels of land which were within the boundaries of the road as it was actually opened were not within its boundaries as located upon the map. These facts lay at the basis of the law of 1892. They are fully established by the evidence, and as to them there can be no possible question. It is a matter of no importance

what was the reason of this discrepancy. It may have been because the figures put upon the original map were not correct, and did not describe accurately the curves and tangents of the map as laid out upon the paper. It may have been because the map, although correct, was not properly followed in laying out the road upon the ground. Whatever may have been the reason, the fact undoubtedly was that a serious discrepancy existed; and it is idle to take the time of the court, and waste the money of the city, in an effort to establish the fact that the road as laid out upon the ground did not contain within its boundaries many parcels of land which were not intended to be taken when the map was made by which it was originally located.

It is also objected that the assessment maps made by the commissioners of appraisal repeat the errors of the map made by the mayor's commissioners, upon which they are founded, and for that reason are defective and erroneous, and therefore the report based upon them ought not to be confirmed. The evidence does not show that any of these maps are either defective or erroneous, but the contrary. A reading of all the testimony leaves upon the mind a clear impression that, whatever may have been the reason, the only correct maps of this road, laying it out upon the ground as it was intended to be located, are those made by the mayor's commissioners and by the commissioners of appraisal.

No other objections are urged here for the reversal of this order, but, nevertheless, we have examined the other objections which are shown in the record. We agree with the court below that none of them are well taken, and that, in despite of them, the order confirming the report should be affirmed, with $10 costs, and the printing disbursements, to be paid by the appellants. All concur.